IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KYLE ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1153 (MN) |
| | ) | |
| JAMIE DIMON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Kyle Anderson, Cheltenham, PA – *Pro Se* Plaintiff

John V. Gorman, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE; Brendan T. Killeen, MORGAN, LEWIS & BOCKIUS LLP, New York, NY; Oluwaseun O. Familoni, MORGAN, LEWIS & BOCKIUS LLP, Washington, DC – Attorneys for Defendants

November 2, 2020
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE:**

I.      **INTRODUCTION**

Plaintiff Kyle Anderson ("Plaintiff") filed this employment discriminations action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, on June 21, 2019. (D.I. 2). He proceeds *pro se*. Before this Court are Plaintiff's motion for default judgment and motion for discovery (D.I. 12, 29) and Defendants' motion for judgment on the pleadings (D.I. 22). The matters have been briefed.

II.     **BACKGROUND**

Plaintiff alleges that, in February of 2019, he was discriminated against based on his gender, after he sought, and Defendants approved, his request for parental leave. (D.I. 2). Plaintiff alleges that he was harassed and then retaliated against with a low performance review. (I*d.*). Plaintiff filed a charge of discrimination with the EEOC, received a notice of right to sue, and commenced this action on June 17, 2019. (D.I. 2; D.I. 2-1). On October 10, 2019, Plaintiff entered into a confidential release agreement ("Release") with Defendant JPMorgan Chase and Co. ("JPMorgan Chase") governed by New York law.[1]

Plaintiff released the right to assert the following claims:

> I hereby . . . release JPMorgan Chase & Co (and any predecessor or successor entities thereof), its affiliates, subsidiaries, employees, directors, officers, representatives, administrators, agents, assigns, trustees, and any fiduciaries of any employee benefit plan (collectively, the "Company") from all liability for any claims or potential claims relating to my employment with the Company and/or the termination of my employment . . . I understand that "claims" includes claims I know about and claims I do not know about, as well as the continuing effects of anything that happened before I sign below. The claims covered by this Agreement include but are not limited to . . . any claims under any federal, state or local

---

[1]     Defendants state that the governing law provision is set forth in the redacted portion of the confidential release agreement. (D.I. 23 at n.1).

> law, including, but not limited to . . . Title VII of the Civil Rights Act of 1964 . . . and any claims of retaliation under all federal, state, local or common or other law. . . .

(D.I. 16 ¶ 19; D.I. 16-1 ¶ 2(a), (c)).

In exchange for the release of claims, Plaintiff was offered a substantial lump sum payment, which he accepted. (D.I. 16 ¶¶ 23, 26; D.I. 16-1 ¶ 1). The Release also contains the following language:

> By signing below, I confirm that I have read this Agreement, understand it, agree to it and sign it knowingly and voluntarily. I agree that I am signing this agreement in exchange for benefits to which I would not otherwise be entitled. I am hereby advised to discuss this Agreement with an attorney of my choosing (at my own expense) prior to the execution of this Agreement. . . . I agree that I have been given a reasonable period of time to review, consider and sign this Agreement. . . .

(D.I. 16 ¶ 22; D.I. 16-1 ¶¶ 26, 27).

The enforcement section of the Release states in part: "I agree that violating my continuing obligations outlined in this Agreement will be considered a material breach of this Agreement and that in such a case it will be appropriate for the Company to take legal action to ask for money and an injunction." (D.I. 16 ¶ 21; D.I. 16-1 ¶ 21). An agreement not to sue provision in the Release provides in part, as follows: "I agree that I will not file a lawsuit or initiate any other legal proceedings for money or other relief in connection with the claims I am releasing above." (D.I. 16 ¶20; D.I. 16-1 ¶ 4).

The Release gave Plaintiff until October 18, 2019 to sign and return it to JPMorgan Chase. (D.I. 16 ¶ 24; D.I. 16-1 ¶ 25). Plaintiff signed the released on October 10, 2018. (D.I. 16 ¶ 25; D.I. 16-1 at 9). Plaintiff did not withdraw his Complaint after he signed the Release and proceeded to serve Defendants with process the following month. (*See* D.I. 10; D.I. 12 at 2; D.I. 16 ¶¶ 28, 29).

On February 10, 2020, Plaintiff filed a motion for default judgment. (D.I. 12). On February 24, 2020, Defendants filed an Answer, Defenses, and Counterclaim to the Complaint. (D.I. 16). The Counterclaim, with its attached redacted confidential release agreement, seeks declaratory judgment on the grounds that Plaintiff released and waived his right to assert the claims set forth in his Complaint pursuant to a confidential release agreement executed on October 10, 2019. (D.I. 16, D.I. 16-1). Plaintiff did not file an answer to the Counterclaim.

On May 21, 2020, Defendants filed a motion for judgment on the pleadings. (D.I. 22). When Plaintiff failed to timely respond to the motion, this Court entered an order on July 29, 2020 directing Plaintiff to file a responsive brief no later than August 14, 2020. (D.I. 25). When Plaintiff failed to file a responsive brief, this Court entered an order for Plaintiff to show cause on or before September 11, 2020, why the case should not be dismissed for his failure to prosecute. (D.I. 28). Plaintiff did not respond to the show cause order. He did, however, on September 10, 2020, file a response to Defendants' motion for judgment on the pleadings. (D.I. 28). At the same time, Plaintiff filed a motion for discovery. (D.I. 29).

### III. DISCUSSION

#### A. Default Judgment

Plaintiff moves for default judgment on the grounds that he has provided proof of service on Defendants but, as of the date of his filing, February 10, 2020, they had not responded to Plaintiff's claims. (D.I. 12). Defendants oppose and advise that they did not respond to the Complaint because Plaintiff released his claims against them through a confidential release agreement executed on October 19, 2019. (D.I. 17). Defendants were served on November 19, 2019 and November 26, 2019 and answered the Complaint on February 24, 2020.

3

Entry of default judgment under Rule 55 of the Federal Rules of Civil Procedure is a two-step process that first requires entry of default by the Clerk of Court against a party that "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise" (FED. R. CIV. P. 55(a)), followed by entry of default judgment by the Clerk if Plaintiff's claim is for a sum certain or can be made certain by computation or otherwise by the Court upon application (*See* FED. R. CIV. P. 55(b)). Here, the first step has not occurred, i.e., default has not been entered against any party. *See* FED. R. CIV. P. 55(a). Accordingly, entry of default judgment is not appropriate. *See* FED. R. CIV. P. 55(b); *Turner v. Scott*, 781 F. App'x 47 n.3 (3d Cir. 2019) (district court properly denied motions for a default judgment where no default had been entered against any party (citing FED. R. CIV. P. 55(a)-(b)). Therefore, Plaintiff's motion for default judgment will be denied.

### B. Judgment on the Pleadings

Defendants move for judgment on the pleadings on the grounds that: (1) Plaintiff's release of claims in the confidential release agreement is valid and covers all claims brought in Plaintiff's Complaint; (2) by signing the confidential release agreement, Plaintiff released and waived his right to assert the claims set forth in his Complaint; and (3) Plaintiff may not pursue the claims asserted in his Complaint. (D.I. 22). Plaintiff responds that his severance from employment should be considered null and void due to manipulation, coercion, and Defendants' violation of the non-disclosure terms of the severance agreement. (D.I. 28).

#### 1. Legal Standard

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *See Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir.

2010).  In ruling on a motion for judgment on the pleadings, the Court is generally limited to the pleadings.  *See Mele v. Federal Reserve Bank of N.Y.*, 359 F.3d 251, 257 (3d Cir. 2004).  The Court may, however, consider documents incorporated into the pleadings and those that are in the public record.  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial."  When evaluating a defendant's motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party.  *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).  A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Rosenau*, 539 F.3d at 221.

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference."  *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Burlington Coat Factory*, 114 F.3d at 1420.  Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved."  *Turbe*, 938 F.2d at 428.

**2. Analysis**

This Court turns first to Plaintiff's failure to answer or otherwise respond to the allegations in Defendants' Counterclaim with its attached redacted confidential release agreement signed by Plaintiff on October 10, 2019. Defendants filed the pleading on February 24, 2020, making Plaintiff's response due on March 17, 2020. *See* FED. R. CIV. P. 12(a)(1)(B). Under Rule 8(b), Plaintiff was required to respond to Defendants' Counterclaim. Rule 8(b)(6) addresses the effect of failing to deny an allegation. "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." FED. R. CIV. P. 8(b)(6).

Plaintiff did not respond to the Counterclaim. Nor did he respond even after Defendants filed their motion for judgment on the pleadings. Plaintiff's obligation to comply with the Federal Rules of Civil Procedure is not met by stating in his response that the "severance should be consider[ed] null and void due to manipulation [] coercion." (D.I. 28). Accordingly, the factual allegations in Defendants' Counterclaim are deemed admitted because of Plaintiff's failure to deny them. *See*, *e.g.*, *United States Use of Automatic Sprinkler Corp. v. Merritt-Chapman & Scott Corp.*, 305 F.2d 121, 123 (3d Cir. 1962) ("Since the Answer fails to deny the quoted allegations of the Complaint, they are deemed admitted."); *Routes 202 & 309 & Novelties Gifts, Inc. v. Kings Men*, No. CIV.A. 11-5822, 2014 WL 899136, at *7 (E.D. Pa. Mar. 7, 2014) (Plaintiff's failure to answer the counterclaim has caused it to admit the factual allegations of the counterclaim.); *Charles Novins, Esq., PC v. Cannon*, Civ. A. No. 09-5354, 2010 WL 3522793, at *3 (D.N.J. Sept. 2, 2010) (deeming counterclaim's allegations admitted in light of plaintiff's failure to submit an answer that complied with the requirements of Rule 8); *Petrunich v. Sun Bldg. Sys., Inc.,* No. 3:04-CV-02234, 2006 WL 2788208, at *4 (M.D. Pa. Sept. 26, 2006) (allegations admitted where

defendant failed to deny them in answer). For these reasons, this Court accepts the allegations in the Counterclaim as true.

The Release is governed by New York Law. A settlement agreement between two parties to a lawsuit is a form of contract. *Mortellite v. Novartis Crop Protection, Inc.*, 460 F.3d 483, 492 (3d Cir. 2006). Courts are to look to state contract law to resolve disputes over such an agreement. *See id.*

Under New York law, "a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." *Arzu v. City of New York*, No. 13-CV-5980, 2015 WL 4635602, at *4 (S.D.N.Y. Aug. 3, 2015) (citing *Pampillonia v. RJR Nabisco. Inc.*, 138 F.3d 459, 463 (2d Cir. 1998)). "Words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies." *Mateo v. Carinha*, 799 F. App'x 51, 53 (2d Cir. 2020) (summary order) (quotation marks and citation omitted).[2]

Here, it is undisputed that Plaintiff signed the Release and received consideration in the form of a lump sum settlement. Although Plaintiff never sought to set aside the Release, in his opposition to Defendant's motion he now argues that the Release is null and void due to Defendants' manipulation and coercion.[3] (D.I. 28). The response is neither sworn nor verified.

---

[2] Similarly, Delaware courts recognize the validity of general releases. *See Deuley v. DynCorp. Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010). For enforceability under Delaware law, releases of liability "must be crystal clear and unequivocal" and "unambiguous, not unconscionable, and not against public policy." *Barth v. Blue Diamond, LLD*, C.A. No. N15C-01-197 MMJ, 2017 WL 5900949, at *2 (Del. Super. Ct. Nov. 29, 2017) (citation omitted).

[3] Plaintiff has not sought to amend the Complaint to add such allegations. Plaintiff may not amend his Complaint through his opposition brief, and these new facts may not be

Plaintiff states that he was advised his employment would be terminated if he did not accept JPMorgan Chase's offer and he was called several times to accept the offer because he had a second child on the way and legal proceedings take years. (*Id.*). To support his assertions of manipulation and coercion, Plaintiff provides two emails from JPMorgan Chase's employee relations manager. One, dated October 8, 2019, provides documents for Plaintiff to review and execute, and advised Plaintiff to indicate if he had any questions and that research was underway regarding his accrued and unused vacation days. (D.I. 28-1 at 1). The second email, dated October 10, 2019, is a follow-up to the October 8, 2019 email to confirm that Plaintiff received the documents and asking Plaintiff to indicate if he had any questions. (*Id*. at 2). Neither email was part of the Complaint or the Answer, Defenses and, Counterclaim.

"[A] court may not set aside a settlement on grounds of coercion or duress unless these allegations are substantiated by evidence." *Ortiz v. Department of Educ. of NYC*, No. 11-CV-6027 SLT SMG, 2015 WL 5518176, at *15 (E.D.N.Y. Sept. 16, 2015) (citing *Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 561 (S.D.N.Y. 1997)). "In general, repudiation of an agreement on the ground that it was procured by duress requires a showing of both [1] a wrongful threat and [2] the effect of precluding the exercise of free will . . . ." *United States v. Twenty Miljam-350 IED Jammers*, 669 F.3d 78, 88 (2d Cir. 2011) (alteration in original) (citations omitted). Duress cannot be established by a threat to take action that is legally permissible, and preclusion of the exercise of free will requires a showing that

---

considered by the Court on the instant motion to for judgment on the pleadings. *See e.g.*, *Commonwealth of Pennsylvania. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984)) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

8

acceptance of the contract terms was involuntary because circumstances permitted no other alternative. *Id.* (citing *Kamerman v. Steinberg*, 891 F.2d 424, 431-32 (2d Cir. 1989)).

Even were this Court to consider Plaintiff's new claims, he proffered no evidence of coercion or manipulation – just argument. He did not file an affidavit or declaration that he was coerced or manipulated or offer any description of the negotiations that resulted in the Release. By signing the Release, Plaintiff represented that he was entering into the agreement " knowingly and voluntarily." The Release does not contain any inappropriate threats or pressure and there is no evidence it was the result of high pressure tactics or deceptive language. Plaintiff had other alternatives to settling; he could have continued to prosecute his case. The emails he submitted are benign and do not hint at coercion or manipulation. Finally, Plaintiff was given ample time to consult an attorney, yet he signed the Release more than a week before the October 18, 2019 deadline. Thus, even were the Court to consider Plaintiff's new argument, it does not demonstrate any compelling circumstances or provide clear and convincing proof that would warrant invalidating the Release.[4]

Finally, there is no dispute that Plaintiff's claims in the instant Complaint are barred by the Release he signed with JPMorgan Chase. As discussed by the United States Court of Appeals for the Third Circuit, "[i]t is hornbook law that employers can require terminated employees to release

---

[4] The claim fails under Delaware for the same reasons. In Delaware, a general release that is "clear and unambiguous" is enforceable unless the plaintiff can demonstrate that there was "fraud, duress, coercion, or mutual mistake concerning the existence of a party's injuries." *Edge of the Woods, Ltd. P'ship v. Wilmington Sav. Fund Soc'y, FSB*, C.A. No. 2000 97C-09-281-JEB, 2000 WL 305448, at *4 (Del. Super. Ct. Feb. 7, 2000). The party raising duress, coercion, fraud, or undue influence bears the burden of proof. *Robert O. v. Ecmel A.,* 460 A.2d 1321 (Del. 1983). "A release will not lightly be set aside where the language is clear and unambiguous. When construing a release, the intent of the parties as to its scope and effect control[s], and the court will look to the overall language of the release to determine the parties' intent." *Bernal v. Feliciano*, C.A. No. N12C-09-062 MJB, 2013 WL 1871756, at *3 (Del. Super. Ct. May 1, 2013) (citations omitted).

9

claims in exchange for benefits to which they would not otherwise be entitled. Nothing in the employment-discrimination statutes undermines this rule. . . . Title VII . . . claims are [] subject to waiver by terminated employees. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974) ('[P]resumably an employee may waive his cause of action under Title VII as part of a voluntary settlement[.]')". *E.E.O.C. v. Allstate Ins. Co.,* 778 F.3d 444, 449 (3d Cir. 2015). A release must be knowingly and voluntarily signed and cannot waive future claims. *Id.* at 778 F.3d at 450 n.4, n.5. In addition, an employee who signs a release must receive consideration in return. *Id.* at 450 (citations omitted).

As discussed above, Plaintiff knowingly and voluntarily signed the Release and received consideration in exchange for his waiver. The terms of the Release are clear and unambiguous and present a sweeping waiver of Plaintiff's employment discrimination and retaliation claims. Plaintiff released Defendants[5] from any claims under any federal, state or local law, including, but not limited to claims arising under Title VII of the Civil Rights Act of 1964 and any claims of retaliation under all federal, state, local or common or other law. These are the very claims Plaintiff raises in his Complaint. Finally, there is no indication that Plaintiff was rushed into signing the release given that it was he who signed the Release at least a week prior to the October 18, 2019 deadline.

This Court has viewed the facts presented in the pleadings and drawn the inferences therefrom in the light most favorable to Plaintiff, the nonmoving party. In doing so, this Court finds that Defendants have clearly established that no material issue of fact remains to be resolved and they are entitled to judgment as a matter of law. *See* FED. R. CIV. P. 12(c); *Wolfington v.*

---

[5] Jaime Dimon is a named Defendant. Title VII, however, does not provide for individual liability. Individual employees are not liable under Title VII. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002); *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001).

*Reconstructive Orthopaedic Associates, Inc.*, 935 F.3d 187, 195 (3d Cir. 2109).  Accordingly, this Court will grant Defendants' motion for judgment on the pleadings, issue a declaratory judgment as sought by Defendants in their Counterclaim for Declaratory Judgment, and dismiss Plaintiff's Complaint.

## V.  **CONCLUSION**

For the above reasons, the Court will:  (1) deny Plaintiff's motion for default judgment (D.I. 12); (2) grant Defendants' motion for judgment on the pleadings (D.I. 22); (3) deny as moot Plaintiff's motion for discovery (D.I. 29); (4) dismiss Plaintiff's Complaint; and (5) enter declaratory judgment on Defendants' Counterclaim.  An appropriate order will be entered.